```
                UNITED STATES DISTRICT COURT
                          FOR THE
                MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :        4:06-CV-0859
                              :
     v.                       :        4:03-CR-0307
                              :
LOU ANN BADMAN                :        (Judge Muir)
```

**ORDER**

June 12, 2006

On November 4, 2003, a federal grand jury returned a two-count indictment charging Lou Ann Badman with 1) conspiracy to distribute and possess with intent to distribute in excess of 500 grams of Methamphetamine, and 2) possession with intent to distribute in excess of 500 grams of methamphetamine.  Badman ultimately pled guilty to the charge in count 1 and on February 23, 2006, we sentenced her to a 10-year term of imprisonment.  The judgment was entered on March 2, 2005.

On March 6, 2006, Badman filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255.  After notifying Badman of the options available to her pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999), Badman advised us on April 12, 2006, that she wished to withdraw her motion and file a subsequent "all-inclusive" § 2255 motion.

On April 24, 2006, Badman filed her supplemental § 2255 motion and a supporting brief.  The government filed its opposition brief on May 15, 2006.  Badman filed a reply brief on June 5, 2006, thereby ripening her § 2255 motion for disposition.

Title 28 United States Code § 2255 authorizes a federal prisoner to move the sentencing court to vacate, set aside, or correct a sentence if

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, ....

28 U.S.C. § 2255. Before considering whether Badman is entitled to any relief pursuant to that section based on the claims asserted in her § 2255 motion, we will set forth the relevant procedural and factual history of the underlying criminal proceedings.

The indictment and an arrest warrant were filed on November 4, 2003. Badman retained Attorney Joseph M. Devecka to represent her in this case. On December 1, 2003, Badman entered a plea of not guilty.

On December 22, 2003, a thirteen-page plea agreement was filed. In that document Badman, *inter alia*, "agrees to plead guilty to Count I of the Indictment ...." (Plea Agreement, p. 1, ¶1) Paragraph two on page two of the document confirms that "[c]ount 1 carries a mandatory minimum period of imprisonment of ten (10) years." Paragraph twenty-seven on pages ten and eleven provides as follows:

> The defendant is aware that Title 18 United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any sentence imposed

> within the statutory maximum, or the manner in which the sentence was determined, on the grounds set forth in Title 18, United States Code, Section 3742, or any other grounds. <u>The defendant also waives the defendant's right to challenge any sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255.</u> The defendant further acknowledges that this appeal waiver is binding only upon the defendant, and that the United States retains its right to appeal in this case.

(Plea Agreement, pp. 10-11, ¶27)(Emphasis added)

A separate three-page document entitled "Statement of Defendant" was also filed in connection with Badman's plea agreement on December 22, 2003. In paragraph 4 on page 2 of that document, Badman represented the following: "I further understand that as part of the plea agreement, I am waiving my right to appeal and/or challenge my conviction and sentence, and the manner in which it was imposed." (Statement of Defendant, p. 2, ¶4) The closing paragraph of that document provides that she "fully understand[s] the foregoing statement, consisting of 2 typewritten pages."[1] (Statement of Defendant p. 3)

Badman's guilty plea hearing was held on January 29, 2004.

---

[1] A portion of that statement is inaccurate. The "Statement of Defendant" in this case contains <u>three</u> typed lines on a third page. However, Badman has not challenged the authenticity of the document, which she and her counsel signed. Although the government cites the "Statement of Defendant" in its opposition brief, Badman completely fails to address its significance. Badman has presented no reason to disregard any of the representations made in the "Statement of Defendant." Despite the discrepancy regarding the number of pages, we will accept the document as valid and rely upon it in this order.

During that proceeding counsel and the court discussed the significance of the waivers contained in paragraph 27 of the plea agreement. Badman indicated that she understood all of the rights which she was giving up by pleading guilty, including the waivers addressed in paragraph 27 of her plea agreement. The following exchange regarding those waivers occurred at Badman's guilty plea proceeding:

>  Mr. Casey:  May I raise something?  Were you going to go over the waiver of appeal?  There is a waiver of appeal in the agreement.
> 
>  The Court:  I didn't notice that.  What paragraph is it?
> 
>  Mr. Thompson:  Paragraph 27.
> 
>  Mr. Casey:  Twenty-seven.  Thank you.
> 
>  The Court:  All right.  The Defendant knowingly waives the right to appeal any sentence imposed within the statutory maximum or the manner in which that sentence was determined on the grounds set forth in Title 18, Section 3742 or any other grounds.  Why should we permit that?
> 
>  Mr. Casey:  Your Honor, the Defendant has agreed as part of a negotiation in reaching a plea agreement to waive her rights under that paragraph.  It's been approved – that procedure has been approved by the Third Circuit Court of Appeals. ...  I think it should be permitted here, Judge, because I think she's getting a very favorable plea agreement.  As Mr. Devecka knows, the quantity of methamphetamine that she's being held accountable for is less than could possibly be proved if we were to put on additional evidence at sentencing.
>    We have agreed not to do that and to hold her accountable only for the amount that was physically – the actual drug that was possessed and not for amounts that could have been proved prior to that time.  And I think Mr. Devecka would agree it would be in her interest to accept the plea agreement.
> 
>  The Court:  I don't know what you have to say, but I am very

uneasy about Defendants giving up their right to appeal. Why do you think it should be done?  What if we impose a sentence that is clearly wrong?

Mr. Devecka:  I heard the testimony of the postal inspector at a suppression hearing in state court.  He did not know what was in the packages that he did not actually inspect.  So I'm not sure whether the government could show more than they have.

Mr. Casey:  Well, Your Honor –

The Court:  Wait.  He's not answering my question.  Why do you think she ought to waiver her right to appeal?

Mr. Devecka:  Not for the reason given by the government.  I have always been hesitant to blanket waiver any appeal on a sentence.  But it was part of the offer that was made to her.

The Court:  Well, why do you think we should permit it?

Mr. Devecka:  I can't think of a reason for permitting it.

Mr. Casey:  Judge, I can think of a reason.

The Court:  What's that?

Mr. Casey:  The reason that the government does this is that we give up certain things in a plea negotiation, and the Defendant gives up certain things.  One of the things the Defendant is giving up is the right to challenge it which saves the government resources and the court resources to fighting an appeal that may last for a long time and to fight a collateral proceeding that may last a long time when she's admitting all of the facts in the plea agreement.
   And I would also point out that you asked earlier, what if there is a sentence that is flatly wrong.  The United States versus Khattak case, which is the case from the Third Circuit that upheld waivers specifically says that if an appeal waiver works a miscarriage of justice then the Court could see fit not to enforce it.  And if that happened in this case, the Court could decide not to enforce it.

The Court:  So that does give her an avenue of escape from an inappropriate sentence?

Mr. Casey:  I believe it does.  And it is specifically

5

>    authorized by the court of appeals.
>
>    The Court:  What's the name of the case?
>
>    Mr. Casey: I don't have the cite.  It is Khattak.  I think the name is spelled K-H-A-T-T-A-K.  United States versus Khattak.
>                         . . .
>    The Court:  We'll permit this to go forward then on the basis of your statement that if we make an error she does have – she still does have a remedy if it is clearly wrong.

(Transcript of Guilty Plea Proceeding, pp. 17-20)

As indicated by the transcript, although we were initially concerned about the scope of that paragraph, we accepted Badman's guilty plea and the parties' plea agreement after Government counsel represented that Badman retained the right to appeal or otherwise challenge her sentence "if it works a miscarriage of justice." (Transcript of Guilty Plea Proceeding, p. 20)

On April 22, 2004, United States Probation Officer Drew Thompson provided us with a copy of Badman's pre-sentence report. Probation Officer Thompson determined Badman's Total Offense Level to be 34, her Criminal History Category to be II, and the guideline imprisonment range to be 168 to 210 months.  Badman objected to paragraphs 30 through 32 of the pre-sentence report, in which three criminal history points were assigned for three separate retail theft convictions before a Pennsylvania District Justice.  After granting the government's three motions to continue Badman's pre-sentence conference, by order dated September 20, 2004, we scheduled the conference for December 10,

2004.

On December 7, 2004, the government filed a motion pursuant to United States Sentencing Guideline § 5K1.1 for a two-level downward departure as a result of Badman's substantial assistance to authorities.

The pre-sentence conference was held on December 10, 2004.

After Badman's objections to the pre-sentence report were fully briefed, on December 23, 2004, we issued an order in which we overruled her objections to the pre-sentence report.

On January 5, 2005, we issued an order in which we granted in part and denied in part the government's motion for a two-level downward departure.  We denied the motion to the extent that the relief requested was limited to a two-level departure. In her brief opposing the government's motion, Badman asserted that she had received two death threats.  The government neither referenced those threats in connection with its motion nor disputed the fact that they had occurred.  We accepted Badman's representations concerning the threats as true and granted her a downward departure of four levels because of her substantial assistance to authorities and the death threats.

In the order of January 5, 2005, we concluded that as a result of the departure Badman's guideline imprisonment range was reduced to 108 to 135 months.  The order also scheduled Badman's sentencing for January 14, 2005.

On January 11, 2005, Probation Officer Thompson informed us that, despite the departure we had granted in our order of January 5, 2005, the government maintained the position that the statutory 10-year mandatory minimum remained in effect and that Badman's actual guideline imprisonment range was 120 to 135 months.  On January 12, 2005, we issued an order in which we 1) continued Badman's sentencing *sine die*, and 2) required the parties to brief the issue of whether the conclusions reached in our order of January 5, 2005, allowed us to impose a sentence below the statutory 10-year mandatory minimum.

After considering the parties' briefs, on February 8, 2005, we issued on order in which we stated the following:

> The facts of this case do not indicate that the government, in its motion for a downward departure or at any other time, desired or consented to a sentence below the ten-year mandatory minimum.  The United States Supreme Court's holding in [Melendez v. United States, 518 U.S. 120, 116 S. Ct. 2057 (1998),] establishes that in the absence of such desire or consent no sentence below the statutory minimum of 120 months may be imposed in this case.

(Order of February 8, 2005, p. 4)  Paragraph 3 of the dispositive portion of the February 8, 2005, order provided that Badman's guideline imprisonment range was, as the government had contended, 120 to 135 months.  In that order we also scheduled Badman's sentencing for February 23, 2005.

On February 23, 2005, we sentenced Badman to the mandatory minimum sentence of ten-years' imprisonment.

With those procedural and historical facts in mind, we turn

to the parties' arguments relating to Badman's § 2255 motion filed on April 24, 2006.

As a threshold matter the government argues that Badman previously waived her right to attack her sentence collaterally by way of a § 2255 motion. In support of this argument the government cites the waiver in paragraph 27 of the plea agreement and the "Statement of Defendant" filed on December 22, 2003.

The Court of Appeals for the Third Circuit has recognized the validity of a defendant's waiver of his or her right to appeal a conviction and sentence. United states v. Khattak, 273 F.3d 557 (3d Cir. 2001). The court reasoned that such waivers "preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty." Id. at 561 (quoting United States v. Rutan, 956 F.2d 827, 829 (8th Cir.1992)).

The specific right waived in Khattak was the right to appeal. In this case the waivers relate both to Badman's rights to appeal and to attack the judgment and sentence collaterally, including the right to pursue relief by way of a motion filed pursuant to 28 U.S.C. § 2255. Despite the distinction, we are of the view that the reasoning and conclusions in Khattak apply in this case.

Badman's response to this threshold argument is that she

> had no clue what a waiver provision was, prior to reading the Government's Opposition of her Motion. She does, however, remember at her change of plea hearing, the Honorable Judge Muir asked her if she was sure she wanted to

> give up her rights. She looked at her attorney for clarification and he advised her to say yes. It is now her assumption that this was one of the rights she was giving up.
> The movant would like it noted that in light of this "new" information being brought to her attention, that she would have still filed a motion, however, it is very probable that she would have addressed the topic specifically in her Motion and in her Memorandum to support as well.

(Reply Brief, p. 2)

Badman grossly mischaracterizes the government's waiver argument as "'new' information being brought to her attention." (Reply Brief, p. 2) The waiver is clearly set forth in paragraph 27 of her plea agreement and it was discussed at length during the guilty plea colloquy. The waiver is also referenced in the "Statement of Defendant" which she signed.

Badman also argues that she received a letter from Attorney Devecka "advising her that she can file for relief under 28 U.S.C. § 2255 and to fill out the forms carefully and submit them within one year of the date of sentencing." (Id.)

The body of the cited letter from Attorney Devecka states in full as follows:

> The institution has a form that you can fill out to file for relief under Federal Act 28 U.S.C.A. § 2255 and forms should be available to you.
> Fill the forms out carefully and submit them within one year of the date you were sentenced. They are very strict about the one year rule. It is not about your charge or plea date. It is one year from the date you were sentenced which was February 23, 2005.

(Brief in Support of § 2255 Motion, Exhibit F)

During the guilty plea proceeding on January 29, 2004, Attorney Devecka's responses to the court's inquiries regarding the waiver at issue indicate that both he and Badman fully understood it.

No portion of Badman's ineffective assistance of counsel claim against Attorney Devecka is based on the advice he gave and the actions he took in connection with Badman's guilty plea proceeding. Regardless of the manner in which Attorney Devecka's letter may be interpreted, there is no basis to conclude that Attorney Devecka somehow misled Badman regarding the nature or scope of the waiver at issue. We further note that in her "Statement of Defendant," Badman confirmed in writing that she "fully understand[s] the foregoing statement." (Statement of Defendant p. 3)

Badman has not presented any reason to disregard the waiver of her right to challenge her sentence in a § 2255 motion. The ten year sentence imposed was the statutory mandatory minimum. No miscarriage of justice has been shown. Consequently, we are of the view that Badman's knowing and voluntary waiver of her right to attack her judgment and sentence collaterally remains effective should be applied in this case.

One reason to deny Badman's § 2255 motion is that she waived her right to file such a motion in the absence of a miscarriage of justice and no such miscarriage has occurred in this case.

11

However, that is not the only reason to deny the motion.

Out of an abundance of caution, we will proceed to consider the substantive merits of Badman's claims. Badman first contends that Attorney Devecka's representation constitutes ineffective assistance of counsel.

The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 684 (1984), reh'g denied, 467 U.S. 1267 (1984), held that the test for judging any claim of ineffectiveness of counsel is whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. The Court developed a two-prong test requiring the defendant to show that: (1) counsel's performance was deficient and, (2) the deficient performance prejudiced the defense. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. See also Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992), cert. denied, 113 S.Ct. 1368 (1993)(petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different).

In order to prevail on any claim based on her counsel's ineffectiveness, Badman must prove both that her counsel's performance was deficient and that sufficient prejudice has resulted from such performance. Strickland v. Washington, 466

U.S. 668, 700 (1984).

Badman bases her ineffective assistance of counsel claim on the allegations that Attorney Devecka: 1) failed to respond to numerous letters and phone calls from her; 2) "failed to oversee the cooperation of his client" (Memorandum in Support of § 2255 Motion, p. 6); 3) misrepresented to Badman or misunderstood the procedures available for obtaining a reduced sentence by way of a motion filed pursuant to § 5K1.1 of the Guidelines or Federal Rule of Criminal Procedure 35; 4) failed to keep Badman informed of developments in this case; 5) failed to inform the government of all the relevant facts concerning her cooperation; and 6) did not inform Badman of the deadline for filing a § 2255 motion until the deadline had almost passed.  We first consider whether Badman has shown any prejudice as a result of Attorney Devecka's alleged ineffectiveness.

For the purposes of this argument we will accept as true all of Badman's allegations concerning Attorney Devecka's conduct (i.e., that he failed to respond to a number of Badman's letters and phone calls; failed to oversee Badman's cooperation with the authorities; misrepresented to Badman or misunderstood the procedures available for obtaining a reduced sentence by way of a motion filed pursuant to § 5K1.1 of the Guidelines or Federal Rule of Criminal Procedure 35; failed to keep Badman informed of developments in this case; failed to inform the government of all

the relevant facts concerning her cooperation; and did not inform Badman of the deadline for filing a § 2255 motion until the deadline had almost passed).

The ten-year sentence imposed in this case was the statutory mandatory minimum. Before Badman was sentenced, the court and the parties were fully aware of all of the facts raised in Badman's § 2255 motion, including the death threats she received for cooperating with authorities. Indeed, in our order of January 5, 2005, we quoted a report prepared by a government agent noting that Badman had received a death threat. Our order of January 5, 2005, was based in large measure upon those threats. Regardless of Attorney Devecka's conduct with respect to Badman's cooperation, there is no question that the government was aware of those threats.

Despite those threats the government insisted that Badman's cooperation did not warrant a sentence below the ten-year mandatory minimum. Badman has failed to establish any connection between Attorney Devecka's allegedly deficient performance and the sentence ultimately imposed. Our review of the record leads us to conclude that 1) no such link exists, and 2) even if Attorney Devecka had done everything which Badman claims he should have done, the sentence in this case would have been the same.

The sixth factor Badman cites in support of her ineffective

assistance of counsel claim relates to the advice Attorney Devecka allegedly gave Badman regarding the process for filing a § 2255 motion. Because there is no federal constitutional right to counsel in post-conviction proceedings, the alleged ineffectiveness of such counsel does not amount to a constitutional violation. *See* Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004)("'... the Sixth Amendment does not entitle a defendant to post-conviction counsel,' and thus, the petitioner bears the risk of attorney error in such proceedings.")

Badman has not demonstrated any prejudice as a result of Attorney Devecka's conduct in this case. Her first claim is without merit.

Badman's second claim is that the criminal history points used to calculate her criminal history score were miscalculated. To a large extent, the substance of this claim was addressed in our order of December 23, 2004. Badman has failed to acknowledge the existence of that order and she has not presented any reason to revisit the conclusions reached in that order. The only new point Badman raises for the first time concerning her retail theft convictions is that "the date of arrest is wrong" in paragraph 30 of the pre-sentence report. Even if such an error exists, Badman fails to explain why such an error would entitle her to any relief in a § 2255 motion.

Badman's third and final claim is entitled "Irreparable

15

Injury."  In this claim Badman states the following

> The defendant is hereby requesting that it be considered that a portion of her time be allowed to be served by way of home confinement.  Due to a [Bureau of Prisons] policy change, she suffers irreparable injury in the way of less time served in a less conventional setting such as on home confinement.

(Memorandum in Support of § 2255 Motion, p. 13)  That claim is actually a request by Badman to serve her sentence in an alternative setting such as a Residential Reentry Center[2] or home confinement.

The regulations cited by Badman provide that such requests shall, in the first instance, be presented to the Bureau of Prisons.  We do not have the authority to act on such a request.  Badman is not entitled to any relief as a result of her third claim.  Badman is required to present her request to the Bureau of Prisons first.

In closing, we note that we may dispose of a § 2255 motion without an evidentiary hearing when the documents submitted in connection with it in conjunction with the court's files and records conclusively show that the movant is not entitled to any relief. United States v. Taylor, 648 F.2d 563, 573 (9th Cir.), *cert. denied*, 454 U.S. 866 (1981).  No hearing is required to dispose of Badman's motion because the documents available to us

---

[2]In a memorandum dated March 31, 2006, the Bureau of Prisons advised that the facilities previously identified as "Community Corrections Centers," would heretofore be known as "Residential Reentry Centers."

16

conclusively establish the facts upon which we have relied to determine that she is not entitled to any relief based upon the claims raised in her § 2255 motion.

Badman's § 2255 motion is meritless and we will deny it.

NOW, THEREFORE, IT IS ORDERED THAT:

1. Badman's § 2255 motion (Document 76) is denied.
2. Any appeal from this order will be deemed lacking a substantial showing of the denial of a constitutional right and, therefore, a certificate of appealability will not be issued.

s/Malcolm Muir  
MUIR, U.S. District Judge

MM:ga